Laguerre Lensendro

3:25-CV-01009-AWT

V

SEP 29 2025 PM 8:56
FILED - USDC - BPT - CT

Bozzuto Management Company

## Objection To Dismissal

Counsel for Defendant, Mr. James O. Craven of WIGGIN AND DANA LLP, opens his Motion not with law or facts material to this case, but instead with a sweeping and irrelevant attack on my litigation history. He leads by asserting that my filing is "just the latest in a series of frivolous lawsuits," inviting this court to to rule not on the pleadings before it, but on my prior, unrelated grievances.

This is a deeply improper maneuver, and Mr. Rich, as a licensed officer of the court, knows it. Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain:

*"a short and plain statement of the claim showing that the pleader is entitled to relief."*

This Complaint meets that threshold. Whether I've previously sued a bank, a credit bureau, or the Queen of England is of no relevance whatsoever to whether or not Bozzuto is at fault here.

Mr. James O. Craven of WIGGIN AND DANA LLP strategy is not legal defense, but rather deflection. His client was given securities and interest in security which the law sees as a sale and has refused to perform or reciprocate. Rather than address that act, he invites this Court to weigh my past filings; and such is manipulation and character assassination.

To be blunt Mr. James O. Craven of WIGGIN AND DANA LLP is pleading/argument is asinine. He begins his motion by implying that the volume of my filings somehow voids the claim of this case, and did not even do the research to realize that it is his argument that is without merit but accuses me of such.

This Court is bound to rule on what happened between me and Bozzuto not what happened between me and Capital One, or Experian, or any other party that Mr. James O. Craven of WIGGIN AND DANA LLP lists in footnotes like some accusatory résumé. The introduction of these cases serves no purpose except to poison the well. Such tactics reflect more on the professional ethics of defense counsel than on the legitimacy of my claim. Mr. James O. Craven of WIGGIN AND DANA LLP should know better.

Let the record reflect that Mr. James O. Craven of WIGGIN AND DANA LLP has not refuted the material facts. He has not shown that no security was given. He has not shown that Bozzuto returned it. He has not shown that Bozzuto fulfilled its duty. Instead, he asks the Court to ignore the elements and instead judge me by my persistence.

If this is Mr. James O. Craven of WIGGIN AND DANA LLP standard of defense, then perhaps his motion/argument should be denied, not mine.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and the Second Circuit in *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016), explained that this standard is met where the complaint contains factual content sufficient to allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct, hence why In paragraph 5 of my complaint, I alleged that "Bozzuto Management Company was making offers," showing there was an apartment availability offer being made by the Defendant.

In paragraph 8, I stated that I "decided to accept Bozzuto's offer and entered into a contract or sale," and I referenced the documentation of that transaction. (See Exhibits 1 and 2 at Doc 1, pages 4–5.)

In paragraph 9, I stated that I parted a $500 security deposit and "tendered an instrument in the amount of $75,000 as additional security or advance rental payment as performance to the contract." (See Exhibit 3.3 at Doc 1, pages 5–9.)

In paragraph 10, I alleged that I delivered instructions along with the instrument, directing that it be held in escrow, and I cited Connecticut law requiring the same—specifically, Conn. Gen. Stat. § 47a-21(h)(1). (See Exhibits 3–5.2 at Doc 1, pages 6–18.)

In paragraph 11, I alleged that Bozzuto knowingly received this instrument "for a specific purpose, namely, to be deposited and held in escrow," and failed to do so, thereby breaching its fiduciary obligations and the trust relationship created by that delivery.

In paragraph 13, I alleged damages: that I was deprived of the benefit of the bargain—specifically, the apartment unit and the value of the instrument I tendered.

Each of these allegations is specific, factual, and supported by documentation attached to my complaint. They are not conclusions. They are well-pleaded facts that, when accepted as true and viewed in my favor, state a plausible claim for relief. That is all the law requires at this stage.

Mr. James O. Craven of WIGGIN AND DANA LLP further demonstrates that he either failed to research the scope of the Securities Act or deliberately omitted relevant authority. In his motion, Mr. Craven relies on *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), to argue that the Securities Act of 1933 is exclusively about public offerings and issuer disclosure.

Mr. Craven either does not know or omits that not all securities are public, and not all securities must be registered. The transaction here was private. There was no public involved, no mass investor pool, and no requirement of registration because none was triggered. 15 U.S.C. § 77d(a)(2).

*"The provisions of section 77e of this title shall not apply to transactions by an issuer not involving any public offering*

The application, the $500 security deposit, and the $75,000 bill of exchange are all securities and their disposition is recognized as a sale.

Moreover, Mr. Craven incorrectly asserts that only "companies issuing securities (known as 'issuers')" fall within the scope of the Act. But Congress defined the term *issuer* far more broadly in 15 U.S.C. § 77b(a)(4) to include:

*"every person who issues or proposes to issue any security."*

This includes individuals, trusts, or natural persons, corporations and so on.


Mr. Craven James O. Craven attempts to undermine my claim by stating that I "fail to allege what exact statute Bozzuto purportedly violated" under the Securities Act of 1933, and that Bozzuto is not alleged to be an issuer or seller of securities. This argument misunderstands the role that 15 U.S.C. § 77b(a)(3) plays in this action. The statute defines the term "sale" to include every disposition of a security or interest in a security, for value. The law recognizes my transaction with Bozzuto as a sale. That fact supports the existence of a contract as sales are a subset of contracts and a failure to perform on that sale/contract is a breach. Mr. Craven's focus on statutory violation only deflects from the material issue: which is that a transaction occurred, value was transferred, and Bozzuto failed to perform nonperformance in a sale/contract is a breach."


Now we must assess what securities were disposed of or what interest was given in a security, but before doing so we must first assess what the word or term "any" means.

"Any" signifies breadth and absent of restrictions. It may include "all," but its core meaning is "without limitation." Grammatically, it functions as a non-specific determiner, it does not specify which item is meant, but instead permits an open, unrestricted reference

And the U.S supreme court agrees in United States v. Gonzales, 520 U.S. 1 (1997): the court said

*"Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (citing Webster's Third New International Dictionary 97 (1976))"*

One such security is the Social Security number, which was submitted as part of the rental application. Under 15 U.S.C. § 77b(a)(1), the term "security" includes "any evidence of indebtedness." The word "any" is not limiting—it encompasses all forms of indebtedness without qualification.

According to 20 C.F.R. § 422.104, the Social Security Administration may assign *"you"* a Social Security number. The term "you" is hyperlinked in that regulation.

When you click the link—available at [law.cornell.edu/cfr/text/20/422.104](law.cornell.edu/cfr/text/20/422.104)—it redirects to 20 C.F.R. § 422.402, which defines "you" as:

*"An individual who owes a debt to the United States within the scope of this subpart."* ([https://www.law.cornell.edu/definitions/index.php?width=840&height=800&iframe=true&def_id=efe4e8e1159f2b4e657488f2c77723bf&term_occur=999&term_src=Title:20:Chapter:III:Part:422:Subpart:B:422.104](https://www.law.cornell.edu/definitions/index.php?width=840&height=800&iframe=true&def_id=efe4e8e1159f2b4e657488f2c77723bf&term_occur=999&term_src=Title:20:Chapter:III:Part:422:Subpart:B:422.104))

Thus by virtue of me, or anyone having a social security number according to the code of federal regulations I am a debtor to the United States. [I cannot speak about the validity of this debt or how it arose but nonetheless it is still evidence of indebtedness]

The number evidences indebtedness, satisfying the statutory definition of a "security." When I submitted my application bearing that number, I disposed of an security which is the application because that number is affixed to it, and interest in a security which is that number to pull my credit/do a background check or whatever else.

Moreover, the application was accompanied by Federal Reserve Notes, specifically, the $500 application fee disguised as reservation deposit. Under 18 U.S.C. § 8, the term "obligation or other security of the United States" expressly includes Federal Reserve Notes. Therefore, Federal Reserve Notes are themselves securities 15 U.S.C. § 77b(a)(1)

defines a "security" to include "any note, evidence of indebtedness, [or] any instrument commonly known as a security." Federal Reserve Notes clearly fall within this definition by virtue of 18 U.S.C. § 8, and their transfer/delivery as part of the application process constituted the disposition of a security.

A bill of exchange is a security under the federal reserve act [see 12 U.S.C. § § 411-412] because the statute expressly authorizes Federal Reserve notes to be issued upon the security of "notes, drafts, and bills of exchange, It further mandates that such instruments be "tendered" in an amount equal to the application, establishing that the bill of exchange, when submitted with an application for issuance of Federal Reserve notes, operates as security. [That is the exact wording in the satute]

Whichever way one looks at it—whether as the submission of an application, the delivery of Federal Reserve Notes, or the tendering of a bill of exchange all of these instruments were given together, with each one reinforcing the other. The bill of exchange is a security under the federal reserve act.

The Federal Reserve Notes are also securities under 18 U.S.C. § 8, and the application bearing my Social Security number, itself evidence of indebtedness under 20 C.F.R. § 422.402 is likewise a security under 15 U.S.C. § 77b(a)(1). All these instrument were submitted with one another. Under the language of 15 U.S.C. § 77b(a)(1):

*"Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been offered and sold for value."*

It all depends on how you look at it. All of the items I gave, whether it is the application, the Federal Reserve notes, or the bill of exchange, are securities. The application is a security because when it was submitted, it carried with it an interest in a security, which is either the Social Security number or the application itself with that number attached. The Federal Reserve notes are securities too. And they were given along with the application and the bill of exchange.

Finally, the Securities Act does not stop at the instrument itself; it extends the definition of a security to include "any interest." I hold a direct interest in each of the instruments I issued. Whether in the value tendered, the rights represented, or the obligations created.

That interest itself is a security, and reinforces my notion that all those things given were in fact securities for they bear my interest. This is consistent with Connecticut law. Under Conn. Gen. Stat. § 42a-8-102(a)(10), a "financial asset" means a security or any interest in a security, and it includes the interest itself or the means by which a person's claim to it is evidenced.

That is exactly what I gave Bozzuto. Whether it was the application bearing my Social Security number, the Federal Reserve notes, or the bill of exchange they are all financial assets and therefore they are all securities. When those assets were given as part of the transaction the law see's such as a sale.

Mr. Craven says my bill of exchange is invalid because it doesn't have an endorsing bank and that I created it myself. The Federal Reserve Act says that when you apply you're supposed to include a tender equal to the amount of the application. That's what I did. I submitted the bill of exchange as the tender. This isn't something I made up. The Congressional Record from March 9th 1933, page 78, says the U.S. government recognizes bills of exchange as eligible paper, at par with national bank notes. And after the Act of June 12, 1945 (59 Stat. 238 §3), national bank notes were replaced with Federal Reserve notes Mr. Craven either doesn't know that or chose to leave this out.

And then there's the word "any." The Securities Act of 1933 says any instrument commonly known as a security. That word matters. "Any" means unlimited. It can mean all, but at the very least it's open-ended. It's a it does not specify which item is meant, but instead permits an open, unrestricted reference.

That means the law is not limiting the definition to instruments that come from banks or financial institutions. It includes whatever is commonly known as a security, period. My bill of exchange qualifies. Just because I created it doesn't mean it falls outside the definition. The word "any" makes sure it's covered. Mr. Craven's argument ignores how Congress wrote the statute and why. The law is broad on purpose, and my instrument falls squarely within it.

And to put this to rest the securities act says

*"Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been offered and sold for value."*

The Boe is a security because it was part of the sale and it is presumed to have been offered and sold for its face value.

Mr. Craven's reliance on common law contract principles is misplaced. This action arises under the Securities Act of 1933, not traditional contract law, and the statute explicitly

defines "offer" and "sale" in broader terms. As the Second Circuit held in *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998),

*"The Act defines an 'offer' to include 'every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value.' This definition extends beyond the common law contract concept of an offer."*

Bozzuto's conduct in maintaining a public facing platform that invites applications, deposits, and other financial instruments constitutes "every attempt or offer to dispose of, or solicitation of an offer to buy, or a solicitation of offers within the meaning of the statute."

This offer/attempt/solicitation culminated in my delivery of a negotiable instrument/security/apliaction rendering the transaction a "sale" as defined in 15 U.S.C. § 77b(a)(3), which includes "every disposition of a security or interest in a security, for value."

Under the statute, Bozzuto solicited a security, and as a party who received that security, became a purchaser under the statute; as stated in *SEC v. Guild Films Co.*, 279 F.2d 485, 489 (2d Cir. 1960),

*"[t]he term ['purchase']… should be interpreted in a manner complementary to 'sale' which is defined… as including 'every disposition of a security… for value.'"*

Since the Act presumes that a disposition for value constitutes a sale, Bozzuto's receipt of the instrument satisfies the statutory definition of a purchase.

Mr. Craven's argument that no binding contract was formed ignores the fact that under the Securities Act, a sale does not require title to pass or consideration to be returned. This point is reinforced directly by the Second Circuit in United States v. Gentile, 530 F.2d 461 (2d Cir. 1976), where the court rejected the defendant's claim that pledging a security as loan collateral was not a "sale" under the Securities Act. Gentile had argued that because he retained title and received only a loan, the transaction fell outside § 17(a). The court disagreed. It held that

*"[t]here is no requirement that title pass to constitute a 'sale' within the meaning of the statute." In fact, to interpret the word "sale" narrowly, the court warned, would "render superfluous the latter two disjunctive phrases in the statutory definition" namely, "disposition of a security or interest in a security, for value."*

Gentile's act of pledging stock in exchange for a bank loan was deemed a statutory sale because value was received, The relevance is plain: like Gentile, I gave securities, and

Bozzuto received it. The apartment need not have been delivered for a "sale" to occur. Under the statute, the moment I disposed of the instrument for value, a "sale" was complete and Bozzuto, as recipient, became a "purchaser."

This is reinforced by the Second Circuit's decision in *SEC v. Guild Films Co.*, 279 F.2d 485 (2d Cir. 1960), The banks argued they were not "purchasers" because they received the stock in connection with a loan rather than buying it outright. The court rejected that argument, holding that

*"purchase" should be interpreted in a manner complementary to 'sale,' which is defined in § 2(3) as including 'every disposition of a security or interest in a security, for value."*

The court emphasized that allowing recipients of securities to claim exemption merely because they did not formally purchase in the commercial sense would undermine the statutory design. The act of receiving a security as collateral was sufficient to trigger purchaser status and the legal obligations that follow. This ruling is directly relevant here: like the banks in *Guild Films*, Bozzuto received a security. That makes Bozzuto, by law, a purchaser regardless of whether a lease was executed, consideration was returned, or title passed.

Finally Mr. Craven resorts to State common law contract principles, ignoring the law that governs this case. This is not a claim resting on state common law doctrine; it rests squarely on the Securities Act of 1933, which broadens the meaning of "sale," and "offer," well beyond common law concepts. The Act explicitly states that a disposition of security or interest in a security constitutes a sale, and multiple courts including *SEC v. Cavanagh*, *Guild Films*, and *Gentile* have confirmed that title need not pass, and mutual understanding in the classic contract sense is not required. The relevant question is: Was a security disposed of for value? The answer is yes.

Mr. Craven's reliance on Connecticut's common law of contracts in cases such as *Geary* and *Keller* to argue that no contract was formed is misplaced, and without effect As the Supreme Court stated in *Geier v. American Honda Motor Co.*, 529 U.S. 861, 873 (2000),

*"When a state statute, administrative rule, or common-law cause of action conflicts with a federal statute, it is axiomatic that the state law is without effect."*

The securities act of 1933 defines "sale" to include "every disposition of a security or interest in a security, for value," and that statutory definition reflects the very kind of congressional intent referenced in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992):

*"Congress' intent may be explicitly stated in the statute's language."*

Where the Securities Act says a "sale" occurs upon disposition for value, and the defendant received a security, there is no room for state-level contract rules to override that definition. Any attempt to substitute common law "meeting of the minds" for the statutory presumption of sale is not only inapposite it is constitutionally preempted.

Mr. Craven also repeats his earlier theme: that this case is just another baseless lawsuit from someone with a filing history. But I've already addressed this tactic. Whether I've filed one case or one hundred is irrelevant to whether this claim has merit and it does. I have shown that securities were disposed of. I've shown that Bozzuto received value. I've shown that instruments were submitted together as part of a single transaction. The statute presumes that those instruments were sold for value, and Bozzuto, by receiving them, became a purchaser under law. Those are material facts, supported by evidence and law, and they are more than enough to survive a motion to dismiss.

If anything, it is Mr. Craven's motion not my complaint that is meritless. He cites the wrong body of law, ignores controlling definitions, overlooks judicial precedent, and clings to irrelevant attacks on my character instead of engaging the claims pled. The record stands in my favor. For the reasons stated herein his motion should be denied.

Respectfully submitted,

*Laguerre Lensender*

Laguerre Lensender
26 Broad St apt 4
Norwalk CT
06851

Certificate Of Service

I certify that a copy of this document shall be sent to the opposing party's counsel James O Craven on 8/5/2025.

*[signature]*

Laguerre Lensendro
26 Broad St apt 4
Norwalk CT
06851

8/5/2025